IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DANIEL ECKSTROM,　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　Petitioner,　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
v.　　　　　　　　　　　　　　　　　　　　　　　: Civ. Act. No. 16-864-LPS
　　　　　　　　　　　　　　　　　　　　　　　　　:
CLAIRE DEMATTEIS, Commissioner, DANA　　:
METZGER, Warden, and ATTORNEY　　　　　:
GENERAL OF THE STATE OF DELAWARE,　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　Respondents.[1]　　　　　　　　　　　:

J. Brendan O'Neill, Office of Defense Services for the State of Delaware, Wilmington, Delaware. Attorney for Petitioner.

Brian L. Arban, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

**MEMORANDUM OPINION**

September 30, 2019
Wilmington, Delaware

---

[1] Commissioner Claire DeMatteis and Warden Dana Metzger have replaced former Commissioner Robert M. Coupe and former Warden David Pierce, original parties to the case. *See* Fed. R. Civ. P. 11(d).

STARK, U.S. District Judge:

Pending before the Court is an Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") filed by Petitioner Daniel Eckstrom ("Petitioner"). (D.I. 2) The State filed an Answer in opposition, to which Petitioner filed a Reply. (D.I. 9; D.I. 14) For the reasons discussed, the Court will dismiss Petitioner's § 2254 Petition as time-barred by the one-year period of limitations prescribed in 28 U.S.C. § 2244(d)(1).

I.   BACKGROUND

On May 3, 2010, Petitioner pled guilty to possession with intent to deliver marijuana and possession of drug paraphernalia. (D.I. 9 at 1) On that same day, the Superior Court sentenced Petitioner on the possession of drug paraphernalia conviction to a total of five years and ninety days of Level V incarceration, suspended after ninety days for eighteen months of Level III probation. (D.I. 9 at 2) Petitioner did not file a direct appeal.

On December 14, 2010, Petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"), which the Superior Court dismissed on December 29, 2010. (D.I. 9 at 2)

On June 20, 2014, Delaware's Office of Defense Services ("OPD") filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") on behalf of Petitioner, which the Superior Court summarily dismissed on January 15, 2015. (D.I. 9 at 2) The Delaware Supreme Court affirmed that decision on November 4, 2015. *See Jones v. State*, 2015 WL 6746873 (Del. Nov. 4, 2015).

On September 23, 2016, the OPD filed a § 2254 Petition on Petitioner's behalf, asserting that Petitioner's lack of knowledge of an evidence scandal at the Office of the Chief Medical Examiner ("OCME") was material to his decision to plead guilty and, therefore, his guilty plea was

2

involuntary pursuant to *Brady v. United States*, 397 U.S. 742, 748 (1970). (D.I. 2) Petitioner also argues that the Delaware Supreme Court made unreasonable findings of fact during his post-conviction appeal regarding OCME misconduct. The State filed an Answer asserting that the Petition should be dismissed as time-barred or, alternatively, because the Claim is meritless. (D.I. 9) Petitioner filed a Reply arguing that the Court should equitably toll the limitations period and deem the Petitioner timely filed. (D.I. 14 at 7)

### A. OCME CRIMINAL INVESTIGATION

The relevant information regarding the OCME evidence mishandling is set forth below:

> In February 2014, the Delaware State Police ("DSP") and the Department of Justice ("DOJ") began an investigation into criminal misconduct occurring in the Controlled Substances Unit of the OCME.
>
> The investigation revealed that some drug evidence sent to the OCME for testing had been stolen by OCME employees in some cases and was unaccounted for in other cases. Oversight of the lab had been lacking, and security procedures had not been followed. One employee was accused of "dry labbing" (or declaring a test result without actually conducting a test of the evidence) in several cases. Although the investigation remains ongoing, to date, three OCME employees have been suspended (two of those employees have been criminally indicted), and the Chief Medical Examiner has been fired.
>
> There is no evidence to suggest that OCME employees tampered with drug evidence by adding known controlled substances to the evidence they received for testing in order to achieve positive results and secure convictions. That is, there is no evidence that the OCME staff "planted" evidence to wrongly obtain convictions. Rather, the employees who stole the evidence did so because it in fact consisted of illegal narcotics that they could resell or take for personal use.

*Brown v. State*, 108 A.3d 1201, 1204-05 (Del. 2015).

3

## II. TIMELINESS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA's limitations period is subject to statutory and equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010) (equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory tolling).

Petitioner's § 2254 Petition, filed in 2016, is subject to the one-year limitations period contained in § 2244(d)(1). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Petitioner does not allege, and the Court cannot discern, any facts triggering the application of § 2244(d)(1)(B) or (C). He does, however, appear to assert that he is entitled to a later starting date for AEDPA's limitations period – April 15, 2014 – under § 2244(d)(1)(D), because that is the date on which the State began to notify defendants in certain active cases about the OCME evidence misconduct. (D.I. 14 at 7)

In order to determine if the April 15, 2014 revelation of the OCME misconduct constitutes a newly discovered factual predicate warranting a later starting date for the limitations period under §2244(d)(1)(D), the Court must first distill Petitioner's argument to its core. The argument appears

4

to be two-fold. First, Petitioner contends that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose that there was ongoing misconduct at the OCME during the time he was considering whether to enter a plea. Second, he contends that the Delaware state courts should have deemed his guilty plea involuntary under *Brady v. United States*, 397 U.S. 742, 748 (1970), due to the State's failure to disclose the *Brady v. Maryland* evidence, *i.e.*, the OCME misconduct. In short, Petitioner asserts that his lack of knowledge about the OCME misconduct is vital to his habeas Claim because that lack of knowledge rendered his guilty plea involuntary and unknowing under *Brady v. United States*.

Pursuant to *Brady v. United States*, a guilty plea is considered involuntary if it is "induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *Brady*, 397 U.S. at 755. A violation of *Brady v. Maryland* occurs when the government fails to disclose evidence materially favorable to the accused, including both impeachment evidence and exculpatory evidence.[2] *See United States v. Bagley*, 473 U.S. 667, 676 (1985). For purposes of the inquiry under § 2244(d)(1)(D), whether or not the OCME misconduct affected, or could have affected, Petitioner's decision to plead guilty depends on whether the drugs in his case were tested by the OCME and the results were provided to him prior to entering a plea. Therefore, in order to trigger a later starting date under § 2244(d)(1)(D) for this

---

[2]A petitioner establishes a *Brady v. Maryland* violation by showing that: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or it had impeachment value: (2) the prosecution suppressed the evidence, either willfully or inadvertently; and (3) the evidence was material. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Lambert v. Blackwell*, 387 F.3d 210, 252 (3d Cir. 2004).

5

involuntary plea/*Brady v. Maryland* Claim, Petitioner must show that (1) the drug evidence in his case was tested by the OCME and he received the results of the test before entering a plea; and (2) exercising due diligence, he could not have learned that the evidence in his case may have been part of the compromised drug evidence involved in the OCME scandal until April 15, 2014.

Petitioner has not met this burden, because he has not satisfied the first prong of this test. Petitioner entered his guilty plea on May 3, 2010, and the OCME report concerning the drugs was not signed[3] (and therefore presumably not presented to Petitioner) until January 4, 2011. (D.I. 9 at 6 n.15) If the OCME test results were not provided until January 4, 2011, then the test results cannot be said to have played a factor in his decision to plead guilty in May 2010. Thus, the Court need not address the second prong of the aforementioned test, and concludes that Petitioner has not established a factual predicate triggering a later starting date for the limitations period under § 2244(d)(1)(D). Accordingly, the one-year limitations period began to run when Petitioner's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner does not appeal a state court judgment, the judgment of conviction becomes final, and the one-year period begins to run, upon expiration of the time period allowed for seeking direct review. *See Kapral v. United States*, 166 F.3d 565, 575, 578 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999). Here, the Delaware Superior Court sentenced Petitioner on May 3, 2010, and he did not appeal that judgment. Therefore, Petitioner's conviction became final on June 2, 2010. *See* Del. Supr. Ct. R. 6(a)(ii) (establishing a thirty day period for timely filing of notice of appeal). Applying the one-year limitations period to that date,

---

[3]Significantly, Petitioner does not mention the date on which he received the OCME report. He also concedes that he filed the instant Petition after the expiration of AEDPA's limitations period. (D.I. 14 at 7) Given these circumstances, the Court is comfortable presuming that Petitioner did not view the OCME report before entering a guilty plea.

6

Petitioner had until June 2, 2011 to timely file his Petition. *See Wilson v. Beard*, 426 F.3d 653 (3d Cir. 2005) (holding that Federal Rule of Civil Procedure 6(a) and (e) applies to federal habeas petitions); *Phlipot v. Johnson*, 2015 WL 1906127, at *3 n. 3 (D. Del. Apr. 27, 2015) (AEDPA's one-year limitations period is calculated according to anniversary method, *i.e.*, limitations period expires on anniversary of date it began to run).

Petitioner did not file the instant § 2254 petition until September 23, 2016, more than four years after the expiration of AEDPA's statute of limitations. Therefore, the Petition is time-barred, unless the limitations period can be statutorily or equitably tolled.

### A. Statutory tolling

Pursuant to § 2244(d)(2), a properly filed state post-conviction motion tolls AEDPA's limitations period during the time the action is pending in the state courts, including any post-conviction appeals, provided that the motion was filed and pending before the expiration of AEDPA's limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 420-24 (3d Cir. 2000); *Price v. Taylor*, 2002 WL 31107363, at *2 (D. Del. Sept. 23, 2002). However, a post-conviction motion that is untimely under state law is not properly filed for § 2244(d)(2) purposes and, therefore, has no statutory tolling effect. *See Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005).

Here, Petitioner's first Rule 61 motion filed in December 2010 and in the incorrect state court does not toll the limitations period, because it was not properly filed for § 2254(d) purposes. Similarly, the Rule 61 motion Petitioner filed on June 20, 2014 has no statutory tolling effect, because it was filed after AEDPA's limitations period had already expired. Thus, the Petition is time-barred, unless equitable tolling is available.

### B. Equitable Tolling

7

In very rare circumstances, the one-year limitations period may be tolled for equitable reasons when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, **and** (2) some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (emphasis added). Equitable tolling is not available where the late filing is due to the petitioner's excusable neglect. *Id.*; *Miller v. New Jersey State Dept. of Corr.*, 145 F.3d 616, 618-19 (3d Cir. 1998). A petitioner's obligation to act diligently applies to both his filing of the federal habeas application and to his filing of state post-conviction applications. *See LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005). In turn, the Third Circuit has explained that equitable tolling of AEDPA's limitations period may be appropriate in the following circumstances:

> (1) where the defendant (or the court) actively misled the plaintiff;
>
> (2) where the plaintiff was in some extraordinary way prevented from asserting his rights; or
>
> (3) where the plaintiff timely asserted his rights mistakenly in the wrong forum.

*See Jones*, 195 F.3d at 159; *Thomas v. Snyder*, 2001 WL 1555239, at *3-4 (D. Del. Nov. 28, 2001).

Here, Petitioner contends that equitable tolling is warranted because "he pursued his rights diligently" and

> [i]t would be inequitable to prevent him from seeking relief when several similarly situated petitioners will have their claims heard even though they discovered the misconduct at the same time as he did, filed their petitions at the same time or after he did and exhausted their state remedies around the same time as he did. It is unfair to penalize him because his counsel's state resources were significantly strained due to the hundreds of motions they filed upon discovery of the misconduct.

(D.I. 14 at 8)

Petitioner's equitable tolling argument is unavailing. Petitioner concedes he knew the facts surrounding the OCME evidence scandal as of April 15, 2014, yet he did not file the instant Petition

8

until September 2016. His argument that it would be inequitable to find the Petition time-barred because he was unable to file his Rule 61 motion before June 20, 2014 does not demonstrate that he was prevented from filing a basic protective habeas petition[4] at any time prior to September 2016. *See Ross v. Varano*, 712 F.3d 784, 804 (3d Cir. 2013)("[F]or a petitioner to obtain relief [via equitable tolling] there must be a causal connection, or nexus, between the extraordinary circumstances he faced and the petitioner's failure to file a timely federal petition."). Similarly, although a petition filed on or around June 2014 (when he filed his Rule 61 motion) would still have been untimely, Petitioner's act of filing a protective petition around that date would have helped demonstrate reasonable diligence on his part. *See, e.g., Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000) (once extraordinary circumstance ends, petitioner must exercise reasonable diligence in filing his petition).

Finally, to the extent the delayed filing was due to a miscalculation or mistake on the part of the attorney(s) representing Petitioner, "attorney error, miscalculation, inadequate research, or other mistakes" do not amount to extraordinary circumstances for equitable tolling purposes. *See Hendricks v. Johnson*, 62 F. Supp. 3d 406, 411 (D. Del. 2014). In short, Petitioner cannot demonstrate that the OCME scandal, and/or the timing of the State's disclosure about the OCME scandal, actually prevented him from timely filing a petition seeking federal habeas relief. For all of these reasons, the Court concludes that the doctrine of equitable tolling is not available to Petitioner on the facts he has presented. Accordingly, the Court will deny the instant Petition as time-barred.[5]

---

[4]The Supreme Court has explained that a "petitioner's reasonable confusion about whether a state filing would be timely" when attempting to exhaust state remedies may constitute good cause for him to file a "protective petition in federal court and ask[] the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005).

[5]Having concluded that it must deny the Petition as time-barred, the Court will not address the State's alternate reason for denying the Petition.

## III. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484.

The Court has concluded that the instant Petition is time-barred. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## IV. CONCLUSION

For the reasons discussed, Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 is **DENIED**. An appropriate Order will be entered.